I, GAUDIN, Judge.
This is an appeal by the State of Louisiana Department of Transportation and Development from a jury verdict in an expropriation case. The DOTD expropriated two parcels of land in St. Charles Parish under the quick-taking statute, LSA-R.S. 48:448. Following a five-day trial ending on December 15,1995, the jury awarded $1,137,231.00 to Saul Stone, et ux, hereinafter sometimes called “Stone.” The formal 29th Judicial District Court judgment was signed by the trial judge on March 4,1996.
Because the jury’s verdict is substantially supported by the evidence, particularly the testimony of three well qualified appraisers, we affirm.
On appeal, the DODT assigns five trial court errors:
(1) The jury erred in awarding delay damages from February 3,1984;
(2) The jury erred in awarding severance damages based solely on the fact that the property had no access or was “landlocked”;
12(3) The trial judge erred in denying the Motion for New Trial by the DOTD;
(4) The trial court erred in awarding attorney fees, expert witness fees and costs without any hearing; and
(5) The trial judge failed to allow a proper credit to DOTD for the amount of the deposit previously paid to the landowner.
THE EXPROPRIATION
In conjunction with the construction of the 1-310 highway in St. Charles Parish, the state took two parcels of land: parcel 16-15, containing 5.323 acres south of Airline Highway and north of the Louisiana and Arkansas Railroad tracks; and parcel 22-24,1.19 acres needed for relocation of LP & L power lines, situated just south of the railroad right-of-way. A sketch attached to and made part of this opinion shows the location of the two expropriated parcels and also Airline Highway, the L & A Railroad tracks, etc.
The DOTD deposited $446,127.00 into the registry of the court when the order of expropriation was signed in March, 1989. Stone withdrew these funds and answered the state’s petition, seeking an increase. The jury awarded, as just compensation for the property taken, $482,994.00 for parcel 16-15 and $24,000.00 for parcel 22-24. Also awarded were $525,845.00 in severance damages and $550,419.00 for delay damages. Before signing the March 4,1996 judgment, the trial judge subtracted from these awards the amount deposited by the DOTD when the expropriation order was signed.
In addition, the March 4, 1996 judgment awarded to Stone legal interest from March 23, 1989; 25 per cent attorney fees; exhibit costs; court costs; and expert witness fees, $14,617.50 for Ms. Jean Felts, |3$12,675.00 for Fred Guice and $11,950.00 for Bradley Ou-bre.
We shall consider, in the order they were listed in the DOTD’s brief, appellant’s five assignments of error.
*1243 DELAY DAMAGES
Delay damages are compensable damages for property taken out of commerce for an unreasonable length of time pending expropriation or completion of a project. See State Dept. of Transp. v. Scramuzza, 673 So.2d 1249 (La.App. 5 Cir.1996). The Stone jury here awarded such damages from 1984 to 1989, a five-year period.
David Stone, Saul’s son, testified he became aware in the late 1970s that some of his property would be taken for use in the interstate project. After he made an inquiry, he received a letter from the DOTD dated January 31,1979 giving the “proposed location” of the highway construction project. Saul Stone said he knew of the final project plans in “early or mid-1980s, no later than 1984.” He testified that he was not able to do anything with his property between 1979 and 1989.
Stone also said that the subject property had been purchased in 1957 and that portions had been sold in 1968, 1970 and 1980. After 1980, however, they were not able to market the remaining land because knowledge of the pending expropriation was widespread.
Stone’s three expert appraisers — Guice, Ms. Felts and Oubre — calculated the dollar amount of delay damages from 1984 to 1989. They testified that it was generally well known in 1984 that Airline Highway frontage, including Stone’s frontage, would definitely be taken by the state.
In a letter dated February 3,1984, reprinted in toto in Lambert v. State, Through Dept. of Transp., 683 So.2d 839 (La.App. 5 Cir. 1996), at pages 843 and 844, it is clear that the state was not going to allow access Uto the interstate where Stone’s property was situated. This letter, according to Ms. Felts, was not an actual taking but was “... a reasonable time to begin calculating delay damages since this project had been under consideration for a number of years at that time.”
Both Ms. Felts and Guice testified that delay damages should be much greater than the amount awarded by the jury. Ms. Felts said that damages for the state’s delay should be set at $1,501,376.00; Guice’s figure was $617,451.00, $67,032.00 more than the jury awarded. In any event, the testimony of those witnesses suggesting that delay damages were due from 1984 to 1989, supported by the testimony of Saul and David Stone, was accepted by the jury over the experts called by the DOTD, who said no delay damages should be assessed mainly because Saul Stone never applied to the Corps of Engineers and appropriate state agencies for permission to develop his wetlands property. Even if applications had been made, the DOTD contends, there was no assurance Stone would have succeeded.
There was, however, ample testimony indicating that all necessary permits could have been obtained, including permission for a railroad crossing. No DOTD witness said that required permits were unobtainable.
The DOTD does not specifically challenge the methods Stone’s witnesses used in calculating delay damages. The DOTD’s position was and is that no such damages were due, period. It appears from the record, however, that the jury found that there was an unreasonable five-year delay in this project and, further, that it was more likely than not that Stone could have sold or developed the subject property but for the state’s planned/proposed highway project. The DOTD offered no serious evidence showing that the delay was needed or necessary.
In State DOTD v. McMillion Dozer Service, Inc. 639 So.2d 766 (La.App. 5 Cir.1994), cert. den. 646 So.2d 399 (La.1994) at page 769, this Court said: *1244 in an expropriation action. West Jefferson Levee Dist. v. Coast Quality Constr. Corp., 620 So.2d 319 (La.App. 5th Cir.1993).
*1243 “La. Const. Art. I, § 4 provides, in pertinent part, ‘In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss.’ The phrase ‘to the full extent of his loss’ allows compensation in areas that were not previously not compensable, namely economic loss. State, Dept. Of Transp. v. Maynard, 565 So.2d 532 (La.App. 4th Cir. 1990), writ denied, 568 So.2d 1079-80 (La.1990). We previously held that damages caused by property being taken out of commerce for an unreasonable length of time pending expropriation are recoverable
*1244 “Also, in West Jefferson Levee Dist., supra, at 333, we set forth five factors to be considered in maintaining an award for delay damages:
“First, was there a delay in the project? Second, was there a reasonable expectation that the project would receive a permit? Third, what was the period of delay? Fourth, who is legally responsible for the delay? And finally, what is a fair and reasonable calculation of the loss suffered as a result of the delay?”
Stone satisfied all five requirements and is entitled to the delay damages awarded by the jury.
SEVERANCE DAMAGES
Severance damages are appropriate if the property remaining after the taking has lessened in value. The primary reasons for the award of $525,845.00 here was the complete loss of approximately 500 feet of Airline Highway frontage.
DOTD’s experts admitted that some severance damages were due (about $70,000.00 worth). The state’s witnesses testified that Stone could extend the narrow, two-lane frontage road to and onto Stone’s property l6north of the L & R tracks and then construct some sort of railroad crossing to reach the bulk of Stone’s remaining property south of the tracks. DOTD’s brief suggests that the jurors could have been sleeping when its experts testified.
It appears from the record, however, that Stone’s three appraisers provided much more reasonable and acceptable testimony regarding the loss of Airline Highway frontage and its effect on what was left of Stone’s property-
Guice said that the loss of Airline Highway frontage “... physically picked up this property and moved it way out in the boondocks from a development point of view ...”
Ms. Felts, who testified that in her opinion severance damages should be set at $1,005,-589.00, stated that the Airline Highway frontage was “... a major part of the consideration of the whole value of the property. Commercial property generally is not salea-ble unless there’s good visibility from a major highway.”
After the expropriation, she added, the remaining land would have “... very diminished use or no use for commercial purposes.”
Oubre said that the remaining piece of land has no commercial value. If the tract had been developed for premium residential use with direct access to Airline Highway, he said, the tract would have been worth $3,000,000.00. The Stone property in Ou-bre’s opinion, was “nipped in the bud.”
DOTD contends that Guice, Ms. Felts and Oubre based their severance damage beliefs on the false assumption that after the taking there would be no access to the remainder of land-locked property. The Stone experts knew that there could be access via the service road although the service road, |7when and if extended, would traverse a so-called “run down” neighborhood and would run behind or adjacent to a large, elevated interstate highway ramp.
DOTD’s appraisers placed severance damages at $73,841.00, by Ms. Rebecca Deano, and $63,889.00, by Jack E. Evans. Ms. Deano admitted that the only expropriation appraisals she had ever prepared were for the DOTD while Evans said that 50 per cent of his work was for the DOTD.
In any event, there is no cause to reduce on appeal the award for severance damages made by the jury.
MOTION FOR A NEW TRIAL
DOTD moved for a new trial because of alleged juror misconduct. One of the alternate jurors, after being dismissed prior to the start of deliberations by the regular panel, admitted to several persons in the courthouse hallway that he had, despite the trial judge’s admonitions, spoken about the case with other jurors.
Although neither proper nor recommended, this is not wrongdoing justifying a new trial, particularly if there is no showing *1245 or serious suggestion that other jurors may-have been misled.
Granting or denying a new trial rests within the wide discretion of the trial judge, and a trial judge’s determination shall not be disturbed absent manifest error. See Lambert v. State, supra, at page 845.
The trial judge correctly denied the motion for a new trial because of this insufficient reason.
ATTORNEY FEES, ETC.
DOTD contends in this assignment of error that the trial judge set the amount of attorney and expert witness fees and awarded court costs without a necessary contradictory hearing. As authority, DOTD cites State, DOTD v. Williamson, 597 So.2d 439 (La.1992); and Rivet v. State, DOTD, 680 So.2d 1154 (La.1996). Neither of these cases states that a hearing is required although an appellate court can order a hearing if it appears that the awards were unreasonable or that they were made without adequate proof or substantiation or that the award was not sufficiently precise. In the Rivet case, the Supreme Court of Louisiana, at page 1162, remanded for a hearing on attorney fees but only after noting that “... there is no record evidence to substantiate the amount of time actually expended by plaintiffs’ attorney and the trial court erroneously failed to specify an actual dollar amount as an attorney fees award.”
Also in Rivet, the Supreme Court stated at pages 1161 and 1162:
“Regardless of the language of the statutory authorization for an award of attorney fees or the method employed by a trial court in making an award of attorney fees, courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. State, DOTD v. Williamson, 597 So.2d 439, 441-42 (La.1992) and cases cited therein. This court has previously noted that factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court’s own knowledge. Id. at 442. We have further noted that these factors are derived from Rule 1.5(a) of the Rules of Professional Conduct, which provides:
(а) “A lawyer’s fees shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to per-formjgthe legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(б) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.”
In the instant case, the record contains a post trial “Motion for Entry of Judgment” filed by the Stones. In part, the motion says that:
“... defendants are entitled to reasonable attorney’s fees up to a maximum of 25% of the foregoing principal and interest ... and in this case defendants pray that this Court grant the full 25% attorney’s fees, on the grounds that ... the preparation and trial of this case was extensive and complex and justifies a 25% attorney fee.
“Additionally, defendants are entitled to all costs of the proceedings, including ex *1246 pert fees to be set by the Court for Mr. Bradley Oubre, Mr. Fred Guice, and Ms. Jean Felts, who were actually paid $11,-950.00, $12,625.00, and $14,612.50, 1 respectively, plus exhibit costs of the survey which was introduced as Exhibit “1” (which cost $5,457.00) and for the remaining exhibits (which cost $1,200.00), all as shown by the attached Exhibit “B.” All of these amounts may be taxed as costs under the authority of La.R.S. 13:3666 (expert witness fees) and Westwego Canal & Terminal Co. v. Louisiana Highway Commission, 200 La. 990, 9 So.2d 389, 392-3 (La.1942) (expenses incurred for surveys, maps and plats necessary to enable the party to make out his case are taxable as costs).
“Defendants have endeavored to stipulate to the foregoing with plaintiff for the last 45 days, but counsel for plaintiff DOTD has yet to respond favorably or unfavorably.”
Attached to and made part of the motion is an affidavit executed by David Stone along with very detailed statements received from expert witnesses.
The motion asks the trial judge to enter judgment regarding attorney fees, etc.; or, in the alternative, to schedule a contradictory hearing. The DOTD did not respond to this motion. Only after judgment was entered ex parte did the DOTD voice an objection.
In this assignment of error, we are called on to answer two questions: (1) Was a contradictory hearing required? (2) If not, does the record support the amounts awarded and were the amounts reasonable?
We are unaware of any statute or jurisprudence saying that a Incontradictory hearing is absolutely necessary before the trial court can award attorney and other fees. It appears, from the eases previously cited herein, that if no hearing is held, an appellate court can remand for a hearing if the record is not plenteous or it can affirm the awards. The DOTD does not argue that any particular award was unreasonable or excessive; it only contends that a contradictory hearing was fundamental. The DOTD does not say that it was misled by the motion’s wording into believing that a hearing would be forthcoming.
Our full examination of this record, in light of the factors listed in Rivet v. State, DOTD, supra, indicates that the amounts awarded were appropriate. A remand would almost surely be to no avail and could subject the DOTD to increased costs and possibly an added fee for Stone’s attorneys.
This was a complex five-day jury trial. Stone’s claims for additional compensation and delay and severance damages were strenuously opposed by the DOTD at the trial level and on appeal.
The awarding of attorney fees in expropriation cases is not automatic. If the trial court decides that attorney fees are due, it is guided by LSA-R.S. 48:453, as follows:
“Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed twenty-five percent of the difference between the award and the amount deposited in the registry of the court.”
Because a trial judge is obviously in the best position to determine the amount, if any, of attorney fees, he or she has discretion up to the statutory maximum. This discretion is considerable.
Here, the trial judge awarded 25 per cent of $1,137,231.00 plus 25 li2per cent of whatever interest is paid. Although this is the maximum, we cannot say the trial judge’s discretion was abused, considering the time and skillfull effort that went into this litigation and the results obtained.
CREDIT DUE DOTD
In the DOTD’s final assignment of error, it contends that the trial judge did not allow the right credit for the amount deposited prior to trial. This is incorrect.
The DOTD is to bear costs of this appeal.
AFFIRMED.
*1247 ATTACHMENT
[[Image here]]