716 So.2d 372 (1998)
STATE of Louisiana, DEPT. OF TRANSPORTATION AND DEVELOPMENT
v.
AUGUST CHRISTINA & BROTHERS, INC.
No. 97-CA-244.
Court of Appeal of Louisiana, Fifth Circuit.
February 11, 1998.
Opinion After Grant of Rehearing July 28, 1998.
*374 Salvatore Panzeca, Gregory G. D'Angelo, Panzeca & D'Angelo, Metairie, for Plaintiff/Appellant State of Louisiana, Department of Transportation & Development.
Salvatore Panzeca, Gregory G. D'Angelo, Panzeca & D'Angelo, Edward A. Michel, Metairie, for Plaintiff/Appellant on rehearing.
Mack E. Barham, Robert E. Arceneaux, Jerry B. Jordan, Travis Bourgeois, Barham & Arceneaux, New Orleans, for Defendant/Appellee August Christina & Brothers, Inc.
Before GAUDIN, BOWES and GOTHARD, JJ.
BOWES, Judge.
Plaintiff, State of Louisiana Department of Transportation and Development (hereinafter "DOTD"), appeals a ruling of the trial court granting a judgment notwithstanding the verdict ("JNOV") and conditional new trial in favor of defendant, August Christina & Brothers, Inc., (hereinafter "Christina"), and assessing damages, interest, attorney fees, witness fees, costs and sanctions against DOTD totaling $1,076,118.00, and judicial interest from date of judgment until paid.
For the following reasons, we reverse the grant of the JNOV and the conditional grant of a new trial and we reinstate the verdict of the jury and render judgment accordingly.
In addition, we vacate the award of attorney fees, judicial interest, costs and sanctions imposed against the DOTD, and we remand this matter for a determination of attorney fees, costs and expert witness fees in accordance with the views set forth in this opinion.

STATEMENT OF THE CASE
On December 5, 1988 the state filed a petition for expropriation against Christina seeking to expropriate property for the construction of Interstate 310 in St. Charles Parish. Plaintiff alleged that fair and just *375 compensation for the property was $102,233.00 and that amount was deposited in the Registry of the Court. On February 21, 1989, Christina filed a motion to withdraw amount deposited in the Registry of the Court and reserved its right to later contest the value and damage amount set by DOTD. Some discovery motions were filed in 1989. On October 28, 1992, Christina filed a motion to withdraw interest on funds previously deposited in the Registry of the Court.
Notice of completion of the project was filed by DOTD on February 21, 1995. On April 21, 1995, Christina filed an answer to DOTD's petition for expropriation and a reconventional demand, alleging that the sum deposited into the Registry of the Court by DOTD was inadequate to compensate for damages incurred as a result of the expropriation of the property.
On February 29, 1996, DOTD filed a motion for final judgment pursuant to La. R.S. 48:452.1, alleging that Christina had abandoned the suit by its failure to prosecute for five years after the filing of the petition for expropriation. Christina responded with the filing of a motion for sanctions, alleging that DOTD's motion for final judgment was a frivolous and unsupported pleading. The trial judge denied DOTD's motion for final judgment at a hearing on March 20, 1996. The trial court signed an order dated March 27, 1996 referring the motion for sanctions to the trial on the merits.
DOTD sought a writ of review from this Court concerning the denial of its motion for final judgment, but this Court denied the application for writs. DOTD then applied to the Louisiana Supreme Court for supervisory review, but that court also denied DOTD's application, stating "Stay Denied. Writ Denied. Relator may reraise on appeal."
On May 24, 1996, DOTD filed peremptory exceptions of prescription and peremption and no cause/no right of action. The exceptions were denied prior to the commencement of trial on May 30, 1996.
A jury trial was held on May 30-31, 1996 and June 17-19, 1996. On June 19, 1996, the jury returned with a verdict. The jury verdict was made the judgment of the court on July 30, 1996.
Christina filed a motion to fix attorney fees, expert witness fees and to tax costs on July 22, 1996, which was heard on September 24, 1996. On August 7, 1996, Christina filed a motion for judgment notwithstanding the verdict (JNOV), alternative new trial or alternative additur, which was heard on October 29, 1996.
On November 22, 1996, the trial court rendered judgment granting the JNOV and conditional new trial, and assessing attorney fees, witness fees, interest and costs.
On January 16, 1997, DOTD filed its motion for appeal.

FACTS
Christina was the owner of a tract of land running north from River Road to a point about 60 feet short of Airline Highway. The tract of land is approximately one and onehalf arpents wide (288 feet) and is intersected at two places by railroads, namely the Illinois Central Gulf Railroad ("ICG") and the Louisiana & Arkansas Railroad ("L & A"), creating three distinct segments. The state filed suit and expropriated two parcels of land from this property.
The first segment of land runs from the L & A Railroad to the northernmost point of the property, and it contains one of the parcels expropriated (parcel 21-2, located at the northernmost tip and 60 feet from Airline Highway). Immediately adjacent to this segment was a piece of property containing the Koehl Landfill. This landfill encroached upon and encompassed part of Christina's property. Christina sought compensation for the taking of the parcel 21-2, plus severance damages and delay damages to the remainder of this first segment. Delay damages were sought because the landowner alleged that actions of the DOTD caused the property to be taken out of the stream of commerce for almost five years prior to the taking.
The second segment lies between the L & A and ICG Railroads, and consists of approximately 44 acres of virgin cypress swamp. This segment contains the second parcel taken (parcel 15-9, which lies somewhere in the *376 middle of the segment). Christina sought compensation for the property taken, plus severance damages to the remaining property due to the inability to access the property under the I-310 elevated highway.
The third segment of land runs from ICG Railroad to River Road. This tract was unaffected by the taking and no damages were sought by the landowners.
Prior to the start of expropriation proceedings, DOTD had the property appraised by two experts, Jack Evans and Rebecca Deano. Jack Evans determined that the highest and best use of the property was to hold for future speculative development (not within the next 5-10 years) for industrial use (first segment) and residential development (middle segment). He appraised the value of the property taken at $26,852.00, and severance damage to the remainder of the property at $68,746.00. He found that no delay damages were occasioned by the DOTD and he opined that the landowner was due a total of $95,598.00.
Rebecca Deano also found that the best and highest use of the land was to hold for future speculative development. She valued the portions of the property taken at $27,974.00 and appraised severance damages at $74,058.00, for a total valuation of $102,032.00. She also found that no delay damages were warranted in this case.
In filing the suit for expropriation, the state accepted this appraisal of Ms. Deano and deposited the sum of $102,032.00 into the Registry of the Court.
The landowners had the property appraised by two experts, Mr. Fred Guice and Mr. J. Bradley Oubre. Both Mr. Guice and Mr. Oubre testified that the best and highest use of the northernmost tract was commercial, light industrial development and that the best and highest use of the middle tract was residential developmental. They both testified that development was not speculative (that it was believed at the time of the taking that the development would occur within ten years).
Mr. Guice appraised the property taken at $40,000.00. He found that severance damages to the remainder of the property valued at $676,756.00. Mr. Guice also found that actions of the state caused the property to be taken out of commerce prior to the taking and he evaluated these damages at. $564,728.00. He testified that the landowner was damaged in the amount of $1,505,000.00.
Mr. Oubre testified that the value of the land taken was $43,995.00; severance damages to the remaining property was $841,929.00; and that delay damages were valued at $586,409.00, for a total amount of $1,472,333.00.
After trial on the merits, the jury found that the value of the property taken was $30,000.00; that severance damages to the remainder of the property was $100,000.00; and that delay damages were valued at $0.00, for a total verdict award of $130,000.00.

TRIAL JUDGE'S REASONS FOR JUDGMENT
Prior to the rendition of the judgment granting the JNOV, counsel for defendant, Christina, submitted to the trial judge proposed "reasons for judgment," which he had prepared and which were adopted by the trial judge virtually in toto and without change. Appellant objects to this practice or action, and requests that this Court give no value to these reasons by plaintiff's counsel that were signed by the trial judge.
We believe that the better course by far is for a trial judge to author any reasons for judgment himself, thereby giving us the benefits of his thoughts and his insights into the litigation under consideration. This is especially true in a case such as this because the reasons for judgment authored by defendant's counsel, which were accepted and used by the trial judge as his reasons for judgment, overturn a jury verdict which was very unfavorable for the client of the counsel that authored those reasons. However, we are mindful of the jurisprudence which holds that reasons for judgment prepared by counsel are not to be rejected out-of-hand, and should stand, if supported by the evidence. Cooper v. Keyes Offshore, Inc., 421 So.2d 385 (La.App. 1 Cir.1982) citing United States v. El Paso Natural Gas Co., 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964); Lancaster *377 v. Petroleum Corp. of Delaware, 491 So.2d 768 (La.App. 3 Cir.1986).
We do not believe that the vast majority of the reasons for judgment in this case, which were authored by Christina's counsel, are supported by the evidence (as will be obvious from the great many times we have been compelled to reverse the trial judge in this opinion); nevertheless, we have to use them as the trial judge's reasons since they are the only reasons for judgment in the record, but we will have to view them with a jaundiced eye.

ALLEGATIONS OF ERROR

1. The trial court erred in granting defendant a judgment notwithstanding the verdict of the jury (JNOV).
It is elementary that where a case is tried by a jury, that jury is the trier of fact. La. C.C.P. art.1736, Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986); Clayton v. State, Dept. Of Transp. & Development, 599 So.2d 394, 396 (La.App. 5 Cir.1992). The granting of a JNOV completely abrogates and nullifies this basic, mandated and well established role of the jury and, therefore, such action by a trial judge must always be reviewed with great care and caution. Clayton v. State, Dept. Of Transp. & Development, supra at 396; Jinks v. Wright, 520 So.2d 792 (La.App. 3 Cir.1987).
La. C.C.P. art. 1811 sets forth the mechanics for a motion for judgment notwithstanding the verdict. It does not set forth the grounds on which a trial court may grant the motion; however, such criteria has been established by the courts of Louisiana. See Clayton v. State, Dept. Of Transp. & Development, supra.
This Court in State, DOTD v. Scramuzza, 608 So.2d 1069 (La.App. 5 Cir.1992), rev. in part, 610 So.2d 809 (La.1993) and State DOTD v. Scramuzza, 95-786 (La.App. 5 Cir. 4/30/96), 673 So.2d 1249, writ denied, 96-1796 (La.11/1/96), 681 So.2d 1255, aff'd in part, rev'd on other grounds in part, 96-1796 (La.4/8/97), 692 So.2d 1024 set forth in great detail the law germane to a judgment notwithstanding the verdict. The court first discussed the different roles of the jury and the trial judge:
Each had a specific standard to apply and burden of proof to consider concerning the verdict and judgment which they rendered. When facing a verdict after trial, the trier of fact, the jury, must consider the standard of `preponderance of the evidence.' When a party has proven his case to that standard, he is entitled to prevail. When facing a Motion for JNOV, the district judge must consider the standard of `reasonable men could not arrive at a contrary verdict.' When mover has convinced the district judge that this standard was met, the motion should be granted. If the motion was granted based on the district judge's evaluation of the evidence and credibility of the witnesses, then it was improperly granted and should be reversed.

[Emphasis supplied].
673 So.2d at 1254.
This court then set forth the standard used by the trial judge in considering a motion of JNOV:
A JNOV is properly granted `only when the facts and inferences are so strongly and overwhelmingly in favor of one party that the trial judge believes reasonable men could not have arrived at a contrary verdict.' Adams v. Security Ins. Co. of Hartford, 543 So.2d 480, 486 (La.1989). Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991).
JNOV is based on a different standard from additur and remittitur, namely, that based on the evidence there is no genuine issue of fact. Trans Global Alloy v. First Nat. Bank, 564 So.2d 697, 710 (La.App. 5th Cir.1990), affirmed in part, rev'd in part on other grounds, 583 So.2d 443 (La.1991); LSA-C.C.P. art. 1811, Comments1984. Thus, if the jury's verdict is one which reasonable people could have rendered or if the trial court is convinced that, under the evidence, reasonable minds could differ as to the amount of damages, the granting of a JNOV is improper. Anderson v. New Orleans Public Service, supra, Adams v. Security Ins. Co. of Hartford, supra; *378 Trans Global Alloy v. First Nat. Bank, supra.

In considering a motion for JNOV, the trial court may not weigh the evidence, substitute its judgment of facts for that of the jury, or pass on the credibility of the witnesses. Anderson v. New Orleans Public Service, supra; Trans Global Alloy, supra. Furthermore, the court should consider all of the evidence, not just the evidence that supports the non-mover's case, and should give the non-mover the benefit of every legitimate and reasonable inference that can be drawn from the evidence by the jury. Dept. of Transp. and Dev. v. Wahlder, 554 So.2d 233 (La. App. 3rd Cir.1989); McClain v. Holmes, 460 So.2d 681 (La.App. 1st Cir.1984).
673 So.2d at 1254-1255.
See also Clayton v. State, Dept. of Transp. & Development, supra and Lambert v. State Through Dept. Of Transp. & Development, 96-160 (La.App. 5 Cir. 10/16/96), 683 So.2d 839.
This Court further set forth the duties of an appellate court on review:
This court, in reviewing a JNOV, must use the aforementioned criteria in deciding whether or not the motion was properly granted. Anderson v. New Orleans Public Service, supra. If the reviewing court determines that the trial court erred in granting the motion, because reasonable men in the exercise of impartial judgment might reach a different conclusion than the one proposed by the moving party, then the JNOV must be reversed and the jury verdict should be reinstated.
Anderson v. New Orleans Public Service, supra.
673 So.2d at 1255.
This case before us involves the issue of the fair market value of the property at the time of expropriation, the same issue which confronted the court in Scramuzza, supra. There we said:
When a landowner challenges the amount DOTD deposits for compensation for expropriated land, the landowner must prove the greater value by a preponderance of the evidence. State, DOTD v. Dietrich, 555 So.2d 1355 (La.1990). The question of what damages will appropriately compensate the landowner is one of fact. State v. Tramuta, 234 La. 741, 101 So.2d 450 (1958); State, Dept. of Transp. v. Boyce Gin Co-op., 397 So.2d 1087 (La. App. 3rd Cir.1981). Such determination is necessarily dependent on evidence presented by expert witnesses. State, Dept. of Transp. v. Boyce Gin Co-op., Id. However, the fact finder is not obligated to accept an expert's opinion in expropriation cases, since those opinions are not binding and are merely advisory in nature. State, Through DOT v. Estate of Davis, 560 So.2d 566 (La.App. 5th Cir.1990), affirmed in part, amended in part, reversed in part and remanded, 572 So.2d 39 (La.1990); State Dept. of Transp. & Dev. v. Stumpf, 519 So.2d 279 (La.App. 5th Cir.), writ denied, 520 So.2d 753 (La.1988).
Market value of the property is the general measure of compensation, according to its highest and best use. State v. Keller, 520 So.2d 1242 (La.App. 5th Cir.1988). The use of comparable sales is one of the tools to be used in making the determination; however, it is not the sole determining factor. State v. Keller, supra; State Through DOTD v. Estate of Davis, supra.

Much discretion is afforded the trier of fact in evaluating property in expropriation cases. State Through DOTD v. Estate of Davis, 572 So.2d 39 (La.1990). The evaluation of and weight given to the experts' testimony will not be disturbed on review in the absence of manifest error. Id.

673 So.2d at 1255.
Three (3) categories of damages were sought in this case: Damages for (1) property taken; (2) severance damages for property remaining; and (3) delay damages.
With regard to the damages for property taken, the jury awarded $30,000.00. The reasons for judgment state that the jury's award "was supported by some evidence" and, therefore, that award of compensation was not modified.
The second award of compensation was for damages to the property remaining to the landowner, known as severance damages. *379 At the close of trial, the jury found that severance damages in the amount of $100,000.00 were due to the landowner. The trial judge, in granting the JNOV, raised that amount to $313,489.00. The reasons for judgment state that the jury's award of $100,000.00 was "not supported by any evidence."
There were several differences of opinion between the DOTD's experts and the landowner's experts as to the condition and value of the land. Both experts for the DOTD based their opinions on the fact that the property had no recorded access to Airline Highway either before or after the taking of parcel 21-2, and the fact that there was no frontage on Airline Highway. Both of the landowner's experts opined that there was access to Highway 61 before the taking, based on the testimony of the adjacent landowner (who operated a landfill which spilled over onto the property at issue) that he had orally given the landowner permission to cross his land.
The highest and best use was disputed by both parties. The landowners' experts considered that the property was currently ready for development while the DOTD opined that the best use of the property was to hold for future speculative development. In this regard, the jury heard testimony of the nature of the two segments of property at issue. The northernmost segment had been used as a landfill, according to the defendants, or a dump, according to the plaintiffs. Mr. Raul Busquest of the DEQ was called as a witness by the DOTD. He was involved in the closing of the landfill and visited the site 20-30 times. He testified that the site had many violations as a result of noncompliance with DEQ regulations, and was one of the worst violations he'd seen.
The second segment contained virgin cypress swamp, which would require permits from the Department of Environmental Quality and the Department of Natural Resources. No applications for permits were on file with either department.
In the reasons for judgment, it is stated that "the $100,000.00 in severance damages awarded by the jury is not supported by any evidence" and "finds no evidentiary basis in the record and could only represent an impermissible averaging on (sic) compromise figure (sic) simply dreamed up by the jury." We disagree. Both of the DOTD's experts testified that, in appraising the property, they considered its width to be only one arpent, instead of one and one-half arpents, as a result of the location of the illegal landfill on the property. Therefore, we find that a reasonable jury in this matter could have easily accepted the state's evaluation of the severance damages to the remaining property, and then awarded additional compensation because the property was in fact one and one-half arpents wide instead of one arpent wide.
It appears that the trial judge, in granting the JNOV, made his own credibility determination of the DOTD's witnesses. This is forbidden to do. See Scramuzza, supra. Accordingly, we hold that the trial court committed grave and manifest error in granting the motion for judgment notwithstanding the verdict.
The third element of compensation requested by the landowner was delay damages. Delay damages are "compensable damages for property taken out of commerce for an unreasonable length of time pending expropriation or completion of a project." State, Dept. Of Transp. and Development v. Stone, 96-672 (La.App. 5 Cir. 3/25/97), 692 So.2d 1241.
Five factors must be considered in maintaining an award for delay damages:
(1) Was there a delay in the project?
(2) Was there a reasonable expectation that the project would receive a permit?
(3) What was the period of the delay?
(4) Who is legally responsible for the delay?
(5) What is a fair and reasonable calculation of the loss suffered as a result of the delay?
State, Dept. of Transp. and Development v. McMillion Dozer Service, Inc., 93-590 (La. App. 5 Cir. 5/31/94), 639 So.2d 766.
*380 The property owner has the burden of proving, by a preponderance of the evidence, that he suffered loss as a result of the delay in expropriation. State DOTD v. Brookhollow of Alexandria, 578 So.2d 558 (La.App. 3 Cir.1991); State v. McMillion, supra.
The record in this case contains a letter from the DOTD to the Corps. of Engineers on February 3, 1984 stating that no further permits for access on Airline Highway were to be granted because of the I-310 project. The experts for the landowners contend that this letter had the effect of taking the property out of commerce until December, 1988 when the petition for expropriation was filed and, therefore, delay damages were warranted.
The landowner did not testify at trial so there is no evidence to show that he knew of the existence of the letter.
The evidence did establish that the property was being used for a landfill, that the landfill was ordered closed in 1981, and that its closure was extended several times, during which time landfill activities continued. The landfill was ultimately closed in May of 1985, with orders that it be monitored until 1988. The final closure inspection was in February of 1988.
Given this testimony, a rational jury could have easily concluded that it was the landfill activities, and not the DOTD letter, which took the property out of commerce, and that there were no delay damages in this matter. Accordingly, we find that the trial court again committed grave error by granting the JNOV.
The trial court was wrong and manifestly erroneous in granting the motion for judgment notwithstanding the verdict. Therefore, we vacate that judgment, and order that judgment of July 30, 1996, which made the jury verdict the judgment of the court is reinstated.

2. The trial court erred in granting the defendant a conditional new trial.
The trial court granted to defendants a conditional new trial, in the event that the JNOV were to be overturned on appeal.[1]
Pursuant to La. C.C.P. art.1972, a new trial shall be granted:
(1) when the verdict or judgment appears clearly contrary to the law and evidence;
(2) when the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial;
(3) when the jury was bribed or has behaved improperly so the impartial justice has not been done.
A new trial may be granted if there are good grounds therefore (La.C.C.P. art.1973).
In this case, the judgment of the trial court states that "a conditional new trial is granted on the basis that the verdict is contrary to the law and evidence, newly discovered evidence, and the discretionary authority of the court."
The trial court has held that the granting of a motion for new trial is discretionary with the trial court. Fletcher v. Langley, 93-624 (La.App. 3 Cir. 2/2/94), 631 So.2d 693. We agree. Furthermore, we recognize that in considering a motion for new trial, the trial judge is free to evaluate evidence without favoring either party, and may draw his own inferences and conclusions and may evaluate the credibility of witnesses. Lambert v. State, through Dept. of Transp. & Development, 96-160 (La.App. 5 Cir. 10/16/96), 683 So.2d 839. However, the fact that a determination on a motion for new trial involves judicial discretion does not mean that the trial court can freely interfere with any verdict with which it disagrees. Porche v. Winn-Dixie Louisiana, Inc., 93-2075 (La.App. 1 Cir. 10/7/94), 644 So.2d 699. In Fletcher v. Langley, supra at 695, the court recognized that:
The discretionary power to grant a new trial must be exercised with considerable *381 caution for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact-finding is the province of the jury and a trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.
[Emphasis supplied].
See also Zatarain v. WDSU-Television, Inc., 95-2600 (La.App. 4 Cir. 4/24/96), 673 So.2d 1181. Again, we agree with these views and adopt them as our own.
After reviewing the record in its entirety, we cannot say that the verdict of the jury was clearly contrary to the law and evidence. In fact it was relatively close to the testimony of both of the state's appraisers. Therefore, we hold that the trial court, once again, committed grave error in granting a new trial on this basis.
The trial court also granted a new trial based on "newly discovered" evidence.
The Louisiana Supreme Court has said:
A new trial should be granted when there is newly discovered evidence which is not cumulative and which would tend to change the result of the case, and which the party could not know or could not have discovered before or during the trial with due diligence. Due diligence does not require that a party do all that is possible to discover the evidence, but it does require that a party do all that is reasonable to lead to the discovery of the evidence.

Barker v. Rust Engineering Co., 428 So.2d 391 (La.1983).
Defendants argue that the state's expert, Jack Evans, testified on the last day of trial that the T.L. James' sale (one of the comparable sales used by Evans in valuating the property) was a distress sale because it, too, contained a landfill. Defendants' "newly discovered" evidence is that the sale was a distress sale because the seller was under a mandate to get rid of it, and Mr. Evans' statement to the contrary was erroneous. Christina contends that he could not have discovered this evidence prior to trial because he did not know that DOTD's expert would testify that the T.L. James sale was a distress sale due to the landfill.
However, the landowners own expert, Mr. Oubre, testified that the T.L. James sale was a distress sale because of financial considerations. Since the evidence which defendant states could not have been discovered until after trial was actually produced at trial, we do not find that it constitutes "newly discovered" evidence to warrant the grant of a new trial. Furthermore, the fact that the landowner's expert, Mr. Oubre used the T.L. James sale as a comparable shows that the landowners could have discovered the circumstances of that sale prior to trial. Therefore, we do not believe that the evidence in question was, in fact, "newly discovered" or was such that it could not have been discovered with due diligence prior to trial.
In addition, we do find that such evidence would not have materially affected the outcome of the trial, in light of the fact that the jury was made aware of the fact that the T.L. James' sale was a distress sale because of the finances involved through the testimony of Mr. Oubre. Therefore, we hold that the trial court again committed serious error in granting a new trial on the basis of newly discovered evidence.
In addition, however, the trial judge also granted a new trial on discretionary grounds.
The discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility.
Scramuzza, supra, 95-786, 673 So.2d at 1261.
After thoroughly considering and reviewing this action of the trial judge, we find that the jury verdict at issue does not result in a miscarriage of justice. Instead, it appears *382 to this Court that the trial judge personally disagrees with the amount of the awards made by the jury and wishes to award what he himself believes is just compensation. Accordingly, for this reason we hold that the trial court was wrong again and also committed serious error by granting the motion for a new trial based on this reason.

3 and 4. The trial court erred in awarding interest from the date of the taking and also erred in its calculation of attorney fees.
The trial court awarded interest from the date of the taking, December 6, 1988, through date of judgment, November 22, 1996, in an amount of $376,293.00. The trial court also refused to give credit to the DOTD for amounts deposited in the Registry of the Court in calculating both the interest and also in awarding attorney fees.
The award of interest in an expropriation suit is controlled by La. R.S. 48:455. At the time of the filing of this petition commencing this action in December of 1988, La. R.S. 48:455[2] had been amended to provide that:
If the amount finally awarded for compensation exceeds the amount deposited, the judgment shall include legal interest on the excess from the date of legal demand until paid, but such interest shall not accrue on any award made for expert fees or attorney fees prior to judgment.
This version allowed the landowner to collect legal interest only from the time of legal demand, which was interpreted to mean the date of the answer, as opposed to the time of taking, which is when compensation was deposited into the Registry of the Court. State, Dept. of Transp. and Development v. McMillion Dozer Service, Inc., 93-590 (La. App. 5 Cir. 5/31/94), 639 So.2d 766.[3]
In 1992, the statute was again amended and now provides:
If the amount finally awarded for compensation exceeds the amount deposited, the judgment shall include legal interest on the excess from the date of presentation of the petition as provided in R.S. 48:422 until paid, but such interest shall not accrue on any award for expert fees or attorney fees prior to judgment.

[Emphasis supplied].
The 1992 amendment affecting legal interest is a substantive change and can not be applied retroactively. Therefore, it is the 1988 version in effect at the time of the filing of this petition which controls the award of interest in this case. State through DOTD v. Estate of Davis, 572 So.2d 39 (La. 1990); State v. McMillion, supra. That version of the statute provides that legal interest is to be awarded only from the date of the landowner's demand which is the date of the filing of the answer. Accordingly, defendant, Christina, is entitled to interest only from April 4, 1995, the date of the filing of his answer and reconventional demand, and the trial judge erred once again in ruling that interest was due from the date of the filing of suit.
Furthermore, we note that the trial judge committed additional error in ruling that DOTD would not be given credit for sums deposited into the Registry of the Court. La. R.S. 48:455 specifically provides that interest accrues only on the amount in excess of that deposited into the Registry of the Court.
Likewise, the trial judge also erred in failing to give credit for the amount deposited in the Registry of the Court when calculating the award of attorney fees.
La. R.S. 48:453 provides that reasonable attorney fees not to exceed 25% may be awarded on the difference between the compensation awarded in the judgment and the compensation deposited in the Registry of *383 the Court. The compensation award also includes legal interest. East Baton Rouge Parish v. Hays, 527 So.2d 1088 (La.App. 1 Cir.1988).
Accordingly, in this case, attorney fees should be calculated on the difference between the amount deposited into the court and the amount awarded by the jury, plus interest on that difference from the date of the defendant's answer until the judgment.
In the reasons for judgment, it is stated that the failure to give credit for amounts deposited in the Registry of the Court was a penalty to the state for failure to follow appropriate expropriation proceedings. Assuming arguendo only that such contention is true (which it is not), we know of no law or authority which allows a judge to fashion such a penalty himself. This is a brash assumption of power without any basis in law or jurisprudence, and the trial court was clearly erroneous again in failing to give the DOTD credit for the amount deposited into the Registry of the Court.[4]

5. The trial court erred in its awards of costs to defendant.
In this allegation of error, the DOTD alleges that the trial court erred in its award of expert witness fees. The DOTD first alleges that there is no evidence in the record to allow the court to assess fees in this case. DOTD further asserts that the amount of fees assessed are unreasonable and excessive.
The trial court is given much discretion in setting expert witness fees, which must be reasonable and based upon the usefulness of the witness' testimony. State, Dept. of Transp. v. Hecker, 493 So.2d 125 (La.App. 5 Cir.1986).
In fixing expert witness fees, each case must turn on its own peculiar facts and circumstances. Factors to be considered include the amount of time consumed by the experts in compiling their reports; the amount charged the landowner; the amount of time spent in preparing for trial; the amount of time actually spent in court; the expertise of the expert; the difficulty of the appraisal; the amount involved in the award; and the degree to which the expert's opinion aided the court in its decision. Trans Louisiana Gas Co. v. Heard, 629 So.2d 500 (La.App. 3 Cir.1993).
*384 In this case, the trial court awarded expert fees totaling $54,357.00 to six different experts. It is our opinion that these awards, on their faces, are excessive. The record does not contain any evidence regarding what the trial court considered in arriving at the amounts that it did. Accordingly, we vacate those fees and we remand this matter for further consideration.

6. The trial court erred in assessing sanctions against the Department of Transportation and Development and further erred by denying DOTD's motion for final judgment based on abandonment.
DOTD filed a motion for final judgment, alleging that Christina's cause of action for additional compensation had prescribed or had been perempted. The trial court denied DOTD's motion, and DOTD unsuccessfully sought writs with this Court, and then with the Louisiana Supreme Court. While the Louisiana Supreme Court denied the writ application, it specifically provided that DOTD could reurge the issue on appeal.
The chronology of this matter reflects the following:
(1) that suit was filed on December 6, 1988;
(2) discovery was propounded in 1989, with the last matter filed on August 3, 1989;
(3) Christina files a motion to withdraw interest from the Registry of the Court on October 28, 1992;
(4) DOTD files notice of completion of the project on February 12, 1995; and
(5) Christina files its answer on April 21, 1995.
DOTD alleges that Christina took no steps in the prosecution of this matter for five years following the filing of suit (December 6, 1988 to December 5, 1993) or for five years following the initial discovery pleadings (August 3, 1989 to August 2, 1994) and, therefore, the trial court should have found that the action had been abandoned.
Generally, La. C.C.P. art. 561 provides that:
An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of five years[.].
More specifically, La. R.S. 48:452.1 provides in part that:
An owner's claim for an increase in the compensation is abandoned when he fails to take any step in the prosecution of that claim for a period of five years.
Also found within the Revised Statutes is La. R.S. 48:450 B which states:
Where a portion of a lot, block, or tract of land is expropriated, any defendant may apply for a trial to determine the measure of compensation to which he is entitled, provided:
(1) He files an answer within one year from the date he is served, in the same manner provided for service of the petition, with a copy of the department's notice of acceptance, which has been filed with the clerk of court of the parish in which the action is pending, declaring that it has finally accepted the construction of the highway project for which the property was expropriated; provided however, that he may file his answer at any time prior thereto[.]
Laws on the same subject matter must be interpreted with reference to each other. La. R.S. 1:13; D'Abreu v. Diesel Power Intern., Inc., 625 So.2d 540 (La.App. 5 Cir.1993). Furthermore, where two statutes deal with the same subject matter and cannot be harmonized, the statute specifically addressing the matter at issue must prevail over the statute more general in nature. Moolekamp v. Rubin, 562 So.2d 1134 (La. App. 4 Cir.), writ denied, 567 So.2d 108 (La.1990). Accordingly, the rules set forth in Title 48 of the Revised Statutes prevail over the more general provisions found in the Code of Civil Procedure.
In this case, DOTD argued that the statutes, read together, provided that a landowner could wait for one year after the filing of the notice of completion before asserting his claim for additional compensation, provided that this period was not more than five years after the filing of the petition of expropriation.
*385 This argument was rejected by the Second Circuit in State, Depart. Of Transp. and Development v. Townsend, Inc., 28,494 (La.App. 2 Cir. 8/21/96), 679 So.2d 499, 500-501, wherein the court found that the five-year period to prosecute did not commence until the filing of the claim for additional compensation by the landowner:
The language of 48:450B expressly states that the one-year prescriptive period in which a defendant must file his claim for increased compensation is triggered by `noti[ce] in writing by the department that it has finally accepted the construction of the highway project for which the property was expropriated.' (He may, of course, file an answer prior to this particular notice by the department.) Thus, this claim for an increase in compensation must be prosecuted within a five-year period as per Section 452.1.
This decision of the Second Circuit, with which we agree, reversed the ruling of the trial judge, who dismissed a landowner's suit for additional compensation against the state, because no action had been taken in the suit for five years pursuant to La. R.S. 48:452.1, although, at the time of the dismissal, the state had not proved that the landowner had been served with notice of completion more than one year prior to the motion for dismissal as required by La. R.S. 48:450 B.
Accordingly, we hold that the trial court did not err in denying the motion for final judgment filed by DOTD.
In contesting DOTD's motion for final judgment, counsel for Christina also filed a motion for sanctions, alleging that the motion was frivolous. The trial judge awarded $10,000.00 in sanctions; the reasons for judgment state that "the motion was utterly frivolous and filed merely for the purpose of delay and securing another continuance."
La. C.C.P. art. 863 provides for sanctions on an attorney:
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
This Court has previously held that art. 863 in intended for exceptional circumstances and is not to be used simply because parties disagree as to the correct resolution of a legal matter. The district court may not impose sanctions on lawyers simply because a particular argument or ground for relief contained in a non-frivolous motion is found to be unjustified. Sternberg v. Sternberg, 97-101 (La.App. 5 Cir. 5/28/97), 695 So.2d 1068; Petition of Miranne, 626 So.2d 744 (La.App. 5 Cir.1993). In addition, art. 863 was not implemented to inhibit imaginative legal or factual approaches to applicable law or to unduly harness good faith calls for reconsideration of settled doctrine. Petition of Miranne, supra; Loyola v. A Touch of Class Transp. Serv., 580 So.2d 506 (La.App. 4 Cir.1991).
In this case, we find that the trial court once again committed serious error in imposing sanctions in this case for this action by the state. Although DOTD's motion was ultimately found to be without merit, we do not find that it was unjustified, or so lacking in merit as to be considered "frivolous." In fact, the DOTD's position had been accepted by at least one district court. See discussion, supra.
Accordingly, we hold that the trial judge committed serious error one more time in regard to the sanctions imposed, and we reverse that portion of the judgment which assesses sanctions of $10,000.00.

CONCLUSION
For the above discussed reasons, we hold:
(1) The decision of the trial court granting defendant/landowners a judgment notwithstanding the verdict is vacated, annulled and set aside;
*386 (2) The trial court's judgment of July 30, 1996, reflecting the jury verdict in this case is reinstated as the judgment of the trial court;
(3) The judgment granting defendant/landowner a conditional new trial is also vacated, annulled and set aside and judgment is hereby rendered denying the motion for new trial.
(4) The judgment awarding sanctions of $10,000.00 is reversed, as we find that no sanctions are warranted in this case.
(5) The judgment awarding attorney fees, expert witness fees and costs is vacated, annulled and set aside and the matter is remanded for reconsideration of these issues.
JUDGMENT NOTWITHSTANDING THE VERDICT OF THE JURY, JUDGMENT GRANTING CONDITIONAL NEW TRIAL AND JUDGMENT AWARDING SANCTIONS AGAINST THE DOTD ALL VACATED, ANNULLED AND SET ASIDE. JUDGMENT AWARDING ATTORNEY FEES, EXPERT WITNESS FEES AND OTHER COSTS VACATED, ANNULLED AND SET ASIDE AND REMANDED FOR RECONSIDERATION; AND THE VERDICT OF THE JURY IS REINSTATED AS THE JUDGMENT OF THE TRIAL COURT. JUDGMENT DENYING MOTION OF DEFENDANT-APPELLANT FOR FINAL JUDGMENT AFFIRMED.
GAUDIN, J. concurs in part, dissents in part.
GAUDIN, Judge, concurring in part, dissenting in part.
In this case, there is an exceptionally high disparity between the jury's awards and those of the trial judge. I would remand for a new trial before a different jury. Accordingly, I concur in the setting aside of the November 22, 1996 judgment but dissent from that part of the majority opinion voiding the trial judge's order for a new trial in event of a reversal on appeal.
While jury verdicts should be treated with care and caution, they are not absolute. A trial judge is not a disinterested onlooker. He is vested with statutory responsibility once the verdict is in. He can grant a motion for judgment notwithstanding the verdict, as was done here, or he can suggest an additur or remittitur as provided for in LSAC.C.P. art. 1814.
When a jury verdict is approved, directly or indirectly, by the trial judge, that verdict should and must be given a strong degree of permanency. Such was not the case here; in fact, it is apparent that the trial judge believed the jury's awards were grossly inadequate. Differences of this magnitude should be resolved by and with a new trial.
Before GAUDIN, WICKER, GOTHARD, CANNELLA and DALEY, JJ.

ON REHEARING
GOTHARD, Judge.
We granted the application for rehearing filed by the landowners, Christina Bros.
On February 11, 1998, this court rendered an opinion in which the three members of the panel agreed to reverse the judgment of the trial court which granted the Christina's motion for judgment notwithstanding the verdict and alternative trial, and to reinstate the jury verdict rendered in this case. Two members of the panel agreed to reverse the decision of the trial court which granted an alternative trial, however the third member of the panel dissented, stating that he would have affirmed that portion of the judgment and would have remanded the matter for a new trial.
On application of the plaintiffs, we granted a rehearing in this matter, and ordered that the rehearing be had before a five judge panel. Between the time of the original opinion and the rehearing, the original writer of this opinion, Judge Fred S. Bowes, retired which necessitated the appointment of three new members to the panel on rehearing. As a result, the panel agreed to hear argument on all issues raised in the original appeal of this matter.
After consideration, we agree with the results reached by the majority panel in this case and we affirm the holdings previously rendered by this court. In so doing, we wish to make the following statements.
We are aware that the signed judgment which granted the judgment notwithstanding the verdict, as well as the reasons *387 for the judgment, were drafted by counsel for Christina. However, the fact that this judgment, along with the reasons therefore, was drafted by counsel does not preclude us from giving them the same weight as finding actually prepared by the trial court. This practice has been accepted in the courts of this state, Barnes v. L.M. Massey, Inc., 612 So.2d 120 (La.App. 1 Cir.1992) writ denied 614 So.2d 81 (La.1993); and in the federal courts, Schwerman Trucking Co. v. Gartland Steamship Co., 496 F.2d 466 (7th Cir.1974).
Therefore, we have reviewed the judgment and the reasons for judgment signed by the trial court, which granted Christina's motion for judgment notwithstanding the verdict and alternative new trial, as if they had been authored by the trial judge himself. Nevertheless, for the reasons expressed in the prior opinion rendered in this case, we find that the trial judge erred in granting the judgment notwithstanding the verdict and the alternative new trial.
Accordingly, we affirm our original opinion with the additional discussion herein.
JUDGMENT NOTWITHSTANDING THE VERDICT OF THE JURY, JUDGMENT GRANTING CONDITIONAL NEW TRIAL AND JUDGMENT AWARDING SANCTIONS AGAINST THE DOTD ALL VACATED, ANNULLED AND SET ASIDE. JUDGMENT AWARDING ATTORNEY FEES, EXPERT WITNESS FEES AND OTHER COSTS VACATED, ANNULLED AND SET ASIDE AND REMANDED FOR RECONSIDERATION; AND THE VERDICT OF THE JURY IS REINSTATED AS THE JUDGMENT OF THE TRIAL COURT. JUDGMENT DENYING MOTION OF DEFENDANT-APPELLANT FOR FINAL JUDGMENT AFFIRMED.
GAUDIN, J., concurs in part, dissents in part.
GAUDIN, Judge, concurring in part, dissenting in part.
I would concur in part and dissent in part for reasons previously stated.
NOTES
[1] La. C.C.P. art. 1811(C) provides for the ruling on a motion for JNOV/new trial. (C)(2) provides:

If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise.
[2] La. R.S. 48:455 was amended by Act 882 of 1988, effective September 9, 1988.
[3] Prior to the 1988 amendment, La. R.S. 48:455 provided that:

The judgment rendered therein shall include, as part of the just compensation awarded, legal interest on the amount finally awarded as of the date title vests in the plaintiff to the date of payment, but interest shall not be allowed on so much thereof as has been deposited in the registry of the court.
This amendment in 1992 allowed the landowner to collect legal interest for the taking at the time of the taking.
[4] The trial judge stated in his reasons for judgment that he would not give credit for amounts deposited into the registry of the court as a penalty for the DOTD's failure to follow expropriation procedures set forth in the statutes.

La. R.S. 48:477 provides that:
A. Any defendant desiring to contest the validity of the taking on the ground that the property was not expropriated for a public purpose or on the ground that the petition and attached exhibits do not satisfy the provisions contained in R.S. 48:442 through 444 may file a motion to dismiss the suit within twenty days after the date on which the notice was served on him. He shall certify thereon that a copy thereof has been served personally or by mail on either the plaintiff or its attorney of record in the suit. This motion shall be tried contradictorily with the plaintiff to the judge alone and shall be decided prior to fixing the case for trial.
B. Failure to file the motion within the time provided constitutes a waiver of all defenses to the suit except claims for compensation.
In this case, plaintiffs did not file a motions to dismiss and, therefore, waived their right to object to the alleged failure of the DOTD in following statutory procedure.
Furthermore, the trial judge's reliance on Estate of Davis, supra, is misplaced. In that case, the DOTD filed its expropriation suit against an improper party. The petition for expropriation named the estate as defendant, and had an attorney appointed to represent the estate. However, the succession had been opened and the appropriate party defendant was the succession representative. The DOTD then negotiated a settlement with the attorney for the estate, who represented only some of the heirs. The funds on deposit were withdrawn by the attorney and only one of the heirs (without the knowledge and consent of the other heirs, some represented by the attorney and some not represented). The settlement was annulled and the matter proceeded to trial. Some of the funds withdrawn were not returned to the registry of the court. The Louisiana Supreme Court found that because the DOTD filed suit against an improper party, the funds deposited into the registry of the court were not deposited for use and benefit of the persons entitled to the funds and, therefore, DOTD was not given credit for those funds. In this case, there is no question that the proper parties were named as defendants, and that the landowners did receive the funds deposited by the DOTD.